UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 2:14-cr-00194-APG-NJK |
| vs. | |
| GLEN COBB, et al., | REPORT & RECOMMENDATION |
| Defendants. | (Docket No. 47) |

Before the Court is Defendants' Motion to Suppress Telephonic Communications. Docket No. 47. The Court has considered Defendants' motion, the United States' response, and Defendants' reply. Docket Nos. 47, 75, 80. On September 26, 2014, the Court held an evidentiary hearing on the minimization techniques used, and entertained oral argument on the entire motion. Docket No. 120. For the reasons discussed below, the undersigned Magistrate Judge recommends that the Court DENY Defendants' motion to suppress.

**I.    BACKGROUND**

On June 3, 2014, Defendants were indicted and charged with Conspiracy to Structure Transactions to Evade Reporting Requirements in violation of 31 U.S.C. §§ 5324(a)(1), (a)(3), (d)(1), and (d)(2), and 18 U.S.C. § 371. Docket No. 1, at 2-9. In addition, Defendant Glen Cobb was indicted and charged with Conducting an Illegal Gambling Business in violation of 18 U.S.C. § 1955. *Id.*, at 1-2.

. . .

On July 12, 2014, Defendants filed their Motion to Suppress Telephonic Communications. Docket No. 47. Defendants ask the Court to suppress all telephonic communications intercepted by New York local law enforcement pursuant to the investigation by the District Attorney's Office in Queens County, New York, as well as any and all derivative evidence acquired therefrom. *Id.*, at 1-2. Defendants raise three arguments in favor of suppression: (1) the United States did not obtain proper authorization pursuant to 18 U.S.C. § 2517(5); (2) the recordings were beyond the authorized scope of the interception; and (3) the recordings are not admissible under Federal Rule of Evidence 403. *Id.*, at 4-10.

On July 29, 2014, the United States filed, under seal, its response in opposition to Defendants' motion to suppress. Docket No. 75. First, the United States contends that Defendants lack standing to challenge the admissibility of the wiretaps because they do not qualify as "aggrieved person(s)" under 18 U.S.C. § 2518(10)(a). *Id.*, at 3-4. Additionally, the United States argues that, even if Defendant Glen Cobb was to have standing, the motion to suppress should be denied for the following three reasons: (1) the United States is entitled to use the telephonic communications without authorization under 18 U.S.C. § 2517(5); (2) the recordings do not exceed the scope of the New York warrants; and (3) the recordings are highly probative and minimally prejudicial. *Id.*, at 4-11.

On August 4, 2014, Defendants filed their reply. Docket No. 80. First, Defendants argue that Defendant Glen Cobb has standing to challenge the admission of the intercepted communications without admitting that the interception captured his voice.[1] *Id.*, at 2-3. Second, Defendants contend that, because the offense charged in this case is different from the offenses specified in the New York wiretap order and the United States did not obtain judicial approval, the telephonic communications

---

[1] In reply, Defendants fail to argue that Defendants Anna Cobb, Charles Cobb, and Monica Namnard had standing to challenge the intercepted telephonic communications. *See* Docket No. 80. Accordingly, the United States' argument that Defendants Anna Cobb, Charles Cobb and Monica Namnard lack standing is essentially uncontested. *United States v. McEnry*, 659 F.3d 893, 902 (9th Cir. 2011) (where an argument is available but not raised, it is waived); *Hansen v. Long*, 2014 WL 3435871, *14 (C.D. Cal. Jan. 28, 2014) (failure to address argument in reply is a concession that the argument is correct), *adopted* 2014 WL 3436156 (C.D. Cal. July 10, 2014). Additionally, the Court finds, upon a review of the merits, that Defendants Anna Cobb, Charles Cobb, and Monica Namnard do not qualify as aggrieved persons and do not have standing to challenge the intercepted telephonic communications. Thus, the Court will only address standing as to Defendant Glen Cobb.

should be suppressed. *Id.*, at 3-7.

At oral argument, defense counsel, for the first time, raised arguments premised on the notion that the United States improperly disclosed certain information to the grand jury. *See* Hearing Recording (9/26/14) at 1:07 p.m. At this time, the grand jury transcripts have not been produced to Defense counsel. *See* Docket Nos. 116, 118. Moreover, the motion pending before the Court is a motion to suppress evidence, and not a motion to dismiss the indictment. *See* Docket No. 47. Thus, the argument as to dismissal under 18 U.S.C. § 2518, which was first raised at oral argument, was not properly briefed, and is not properly before the Court. *See Hernandez v. Arizona*, 702 F.Supp.2d 1119, 1128 (D.Ariz. 2010).

## II. DISCUSSION

### A. Standing

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2522, (Title III) regulates the interception of wire, oral, and electronic communications. For the purposes of challenging wiretaps, Title III provides that:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court . . . of the United States . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom on the grounds that . . . the communication was unlawfully intercepted.

18 U.S.C. § 2518(10)(a)(i). An "aggrieved person" is defined as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). Under federal law, a person is "aggrieved" if he satisfies either part of the definition established in 18 U.S.C. § 2510(11): (1) "a party to any intercepted wire, oral, or electronic communication" or (2) "a person against whom the interception was directed."[2] "The Supreme Court has interpreted these provisions as limiting standing to challenge wiretaps to persons

---

[2] Defendants admit that they were not "targets in the Unrelated New York Investigation" and that there was no judicial authorization "to intercept any telephones owned or used by any of the Defendants." Docket No. 47, at 6. As such, Defendant Glen Cobb was not a "person against whom the interception was directed." 18 U.S.C. § 2510(11). *See United States v. Oliva*, 705 F.3d 390, 395 (9th Cir. 2012) (affirming standing when affidavits in support of the surveillance orders included investigators' statements certifying their beliefs that he was using the individual cellular phones at issue); *United States v. Ortiz*, 2013 WL 6842537 (N.D. Cal. Dec. 27, 2013) (finding standing when defendants were listed as "Target Subjects" in the wiretap applications and orders).

1  whose Fourth Amendment rights were violated by the interception." *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1116 (9th Cir. 2005) (citing *Alderman v. United States,* 394 U.S. 165, 175–76, n. 9 (1969)).

The United States represents that the intercepted conversations did not occur on any of the Defendants' premises. Docket No. 75, at 4. The United States also represents that Defendants Charles Cobb, Anna Cobb, and Monica Namnard were not parties to any of the interceptions, and thus lack standing. *Id.*, at 4. Further, the United States contends that, unless Defendant Glen Cobb makes an affirmative admission that it was his voice on the line in the intercepted communications, he also lacks standing. *Id*., at 4. However, the United States also states that Defendant Glen Cobb is a participant on the recordings.[3] Thus, the United States concedes that Defendant Glen Cobb is a party to the recordings, and therefore the Court finds that Defendant Glen Cobb is an "aggrieved person" under 18 U.S.C. § 2510(11) with standing to challenge the wiretap.

The Court recommends that the motion be DENIED as to Defendants Anna Cobb, Charles Cobb, and Monica Namnard for lack of standing. Therefore, the Court addresses the motion as to Defendant Glen Cobb only. Defendant raises three arguments in favor of suppressing the telephonic communications, which will be addressed in turn.

### B.  Authorization under 18 U.S.C. § 2517(5)

Defendant argues that the recordings should be suppressed because the United States failed to apply for additional authorization under 18 U.S.C. § 2517(5) for him in this case. Docket No. 47, at 6-7. Section 2517(5) requires the government to submit an additional application for judicial authorization when an interception "relate[s] to offenses other than those specified in the order of authorization or approval." Here, the only authorization received related to New York wiretaps in which Defendant was not specifically named. Defendant contends that, because the United States did not get the recordings "authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance

---

[3] "Cobb's illegal conduct was properly captured during the recordings authorized by the New York warrants. On numerous occasions, Glen Cobb and England (one of the named parties in the New York wiretap warrants) were recording discussing the settling of gambling debts." Docket No. 75, at 7.

- 4 -

with [Title III], they should be suppressed.'" Docket No. 47, at 7 (quoting 18 U.S.C. § 2517(5)) (emphasis omitted).

The United States contends that the telephonic communications may be used without further authorization due to the "intertwined nature of the charges outlined in the New York warrant and the charges at issue in this case." Docket No. 75, at 4-7. The United States represents that, when offenses specified in the warrant to intercept communications are similar to the offenses in the proceedings for which the information will be used, the additional authorization under Section 2517(5) is not necessary. *Id.*, at 5. The United States relies on *United States v. Bennett*, 219 F.3d 1117, 1123 (9th Cir. 2000), where the Ninth Circuit affirmed the district court's finding that the government did not need to get separate authorization under Section 2517(5) for the murder-for-hire investigation that was discovered through monitoring for a drug conspiracy investigation. In reply, Defendant attempts to distinguish the instant case from *Bennett*, asserting that,"*Bennett* shows the drug conspiracy was 'part and parcel of [a] larger drug conspiracy investigation,'" and that for it to apply in this case there needs to be a showing that the alleged violations of Brandt England served as a motive for Defendant Glen Cobb. Docket No. 80, at 7 (quoting *Bennett*, 219 F.3d at 1123).

If the offenses in this case do not qualify as "other offenses," then the procedures for additional judicial authorization outlined by Section 2517(5) are not required. For example, where new criminal activity is interwoven with criminal activity authorized by the original court order, additional judicial authorization is not necessary. *See United States v. Bennett*, 219 F.3d 1117, 1123 (9th Cir. 2000); *United States v. Ortega*, 520 F. App'x 626, 629 (9th Cir. 2013) (holding that additional judicial authorization was not required when the new crime arose out of and was closely related to the target offenses in the wiretap authorization). In *Bennett*, the Ninth Circuit reasoned that, since the reason for the murder-for-hire was "interwoven" with the drug operation, the wiretap authorization for the drug operation "was sufficient to encompass the murder-for-hire plot." *Id.*, at 1123 (citing *United States v. Petti*, 973 F.2d 1441, 1446 (9th Cir.1992) (holding that facts justifying a wiretap application for uncovering a gambling operation justified the government's shift to investigating a money laundering scheme using the same wiretap)).

. . .

The Court finds this case sufficiently analogous to *Bennett*. In the instant case, the affidavits in support of the New York warrants list crimes which the persons named in the affidavits, along with "their accomplices, co-conspirators, agents, and others yet unknown" are suspected of committing. Docket No. 48, at 8. Specifically, the New York warrants limit the interception and recording to certain named individuals, including Brandt England, as they relate to the crimes of Promoting Gambling and Possession of Gambling Records, in the First and Second Degree, in violation of Article 225 of the New York State Penal Law and Conspiracy to commit these crimes. Docket No. 48, at 118-20. All of the intercepted calls at issue in this case occurred on Brandt England's phone. *See* Hearing Recording (9/26/14) at 12:22 p.m.

Under New York law, "[a] person is guilty of promoting gambling in the second degree when he knowingly advances or profits from unlawful gambling activity." N.Y. Penal Law § 225.05 (McKinney). Pursuant to § 225.00(4):

> A person "advances gambling activity" when, acting other than as a player, he engages in conduct which *materially aids any form of gambling activity*. Such conduct includes but is not limited to conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefor, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation.

N.Y. Penal Law § 225.00(4) (McKinney) (emphasis added).

Defendant was charged with two crimes: conducting an illegal gambling business (count one) and conspiracy to structure transactions to evade reporting requirements (count two). Docket No. 1. His charge of conducting an illegal gambling business in violation of 18 U.S.C. § 1955 reads, in relevant part:

> (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.
> (b) As used in this section—
>     (1) "illegal gambling business" means a gambling business which—
>         (i) is a violation of the law of a State or political subdivision in which it is conducted;
>         (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
>         (iii) has been or remains in substantially continuous operation for

>                    a period in excess of thirty days or has a gross revenue of
>                    $2,000 in any single day.
>           (2)      "gambling" includes but is not limited to pool-selling, bookmaking,
>                    maintaining slot machines, roulette wheels or dice tables, and
>                    conducting lotteries, policy, bolita or numbers games, or selling
>                    chances therein.

In reply, Defendant represents that operating an "'illegal gambling business' [under 18 U.S.C. § 1955] has nothing to do with engaging in 'gambling' as defined by New York law, a wholly *intrastate* act." Docket No. 80, at 5 (emphasis in original). The Court disagrees with Defendant's interpretation of New York law. Under New York law, a person violates § 225.05 when he advances gambling activity when, "acting other than as a player, he engages in conduct which *materially aids any form of gambling activity*."[4] N.Y. Penal Law § 225.00(4) (McKinney). At oral argument, the United States represented that Brandt England was acting other than as a player on the intercepted conversations. *See* Hearing Recording (9/26/14) at 12:22 p.m. Section § 225.05 does not specify that the effects of the promotion of gambling must be intrastate, but rather states the aid can be "*any* form of gambling." *Id.*; N.Y. Penal Law § 225.05 (McKinney) (emphasis added). Consequently, the Court finds that the crimes of Promoting Gambling and Possession of Gambling Records, in the First and Second Degree, in violation of Article 225 of the New York State Penal Law and Conspiracy are sufficiently similar to encompass the first charge against Defendant, that of Conducting an Illegal Gambling Business. Additionally, because the second charge against Defendant, that of Conspiracy to Structure Transactions to Evade Reporting Requirements, was alleged to have been committed in furtherance of the illegal gambling business, it is also encompassed.

. . .

. . .

. . .

---

[4] "A person engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome." N.Y. Penal Law § 225.00(2) (McKinney).

### C.   Minimization under 18 U.S.C. § 2518(5)

Defendant also argues that the recordings should be suppressed because they exceed the scope of the warrants from the New York investigation. Docket No. 47, at 8. Section 2518(5) provides that:

> Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, *shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter*. . . In the event the intercepted communication is in a code or foreign language and an expert in that foreign language or code is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

18 U.S.C. § 2518(5) (emphasis added). This is referred to as the minimization requirement. Although "[t]he statute does not forbid the interception of all nonrelevant conversations," the government must make reasonable efforts to minimize the interceptions of such conversations. *Scott v. United States*, 436 U.S. 128, 140 (1978); *United States v. McGuire*, 307 F.3d 1192, 1202 (9th Cir. 2002) (holding that the minimization techniques used do not need to be optimal, only reasonable). A determination of reasonableness depends on "the facts and circumstances of each case." *Scott*, 436 U.S. at 140. For example, in investigations involving "a wide-ranging conspiracy with large numbers of participants," government agents may posses broader intercept powers. *Bennett*, 219 F.3d at 1124; *Scott v. United States*, 436 U.S. 128, 140 (1978) ("[W]hen the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise").

Defendant alleges that the telephone calls with "any of the Defendants"[5] should have been minimized because the New York investigation was focused on the alleged violation of New York gambling statutes. Docket No. 47, at 8. Because Defendant does not allege that specific conversations to which he was a party should have been minimized, "[the Court] only examine[s] whether the government has shown a prima facie case of compliance with the minimization

---

[5] As stated above, neither side has presented argument that any defendant in this case other than Glen Cobb was captured on the telephone calls. The Court analyzes this issue solely as it relates to Defendant Glen Cobb, the only defendant with standing to bring this motion.

requirement." *United States v. Villalpando*, 77 F.3d 491, 1996 WL 56172, *3 (9th Cir. 1996) (quoting *United States v. Torres*, 908 F.2d 1417 (9th Cir. 1990)). The government has the burden to show proper minimization. *Torres*, 908 F.2d at 1423.

Here, after conducting an evidentiary hearing on the matter, the Court finds that the law enforcement officers adopted reasonable procedures to assure compliance with the minimization requirement. The evidence showed that the District Attorney's office created minimization instructions that were read to the monitoring agents. *See* Gov. Exhs. 1-9; Hearing Recording (9/26/14) at 11:08 a.m. Monitoring agents then signed a typed copy of the minimization instructions, indicating they personally received minimization instructions before they began any monitoring in this case. *See* Gov. Exhs. 1-9. These instructions set forth, among other things: (1) the identities of the target subjects; (2) the criminal offenses for which intercept authority had been obtained; (3) that privileged communications should be minimized; and (4) that conversations that do not at first appear to be pertinent may be monitored for 30 seconds to 2 minutes in order to determine if the conversation relates to a designated crime. *Id.* The minimization instructions state that "pertinent calls" include:

> [T]he conversations of . . . Brandt England . . . as these conversations relate to the Gambling offenses mentioned above, including, but not limited to, the following: conversations regarding the placement and acceptance of bets, instructions and directions from superiors, reports to superiors regarding the daily betting amounts accepted, "settle ups" with individual gamblers, including discussions as to how to "settle up" monies and records proceed up the chain of command of the conspiracy, monies owed by gamblers, and other gambling conversations, which may be cryptic or guarded.

Gov. Exh. 1, at 4. The evidence adduced at the evidentiary hearing further showed that an assistant district attorney also made herself available by telephone in case any questions regarding the warrant arose. *See* Docket No. 1, at 12.

New York Police Department (NYPD) Detective McNally's testimony at the evidentiary hearing revealed that the majority of the calls on Brandt England's phone were pertinent.[6] *See*

---

[6] Detective Gerald McNally testified that he has been with the NYPD for over twenty-one years and has worked on several hundred wiretaps. *See* Hearing Recording (9/26/14) at 11:06 a.m. He has been part of the Organized Crime Investigation Division since 2004. *Id.*

- 9 -

Hearing Recording (9/26/14) at 11:27 a.m. The Government's 10 day reports for Brandt England's phone establish that a portion of the calls were minimized, but that more calls were deemed pertinent. Gov. Exh. 10. Detective McNally further represented that the minimization plan was followed in regard to Brandt England's phone "to the best of [his] knowledge." *See* Hearing Recording (9/26/14) at 11:18 a.m. Moreover, the government did not know the scope of the enterprise; the investigation involved numerous individuals and unknown co-conspirators. "Because the record does not indicate that the [government] intercepted a 'clear pattern of any substantial number of innocent calls,' [the Court] find[s] the interception was properly minimized." *United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir. 1990) (citing *United States v. Chavez*, 533 F.2d 491, 495 (9th Cir. 1976)). The Court finds that the record demonstrates that the minimization efforts were reasonable and in accordance with 18 U.S.C. § 2518(5).

### D. Federal Rule of Evidence 403

Federal Rule of Evidence 403 states that the Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . .unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." (emphasis added). Rule 403 is a balancing process that involves weighing the proffered evidence against its potential unfair prejudice or confusion of the issues. *See United States v. Layton*, 767 F.2d 549, 553 (9th Cir. 1985). The Court must look not merely for prejudice, but unfair prejudice. Unfair prejudice is defined in the Advisory Committee's Note to Rule 403 as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403.

The considerations that go into Rule 403 balancing "are susceptible only to case-by-case determinations, requiring examination of the surrounding facts." *Layton*, 767 F.2d at 554. Defendant represents that the recordings should not be admitted because the probative value is outweighed by the highly prejudicial effect. Docket No. 47, at 8-9. However, Rule 403 is not a consideration for a motion to suppress intercepted communications under Title III. Therefore, the Court cannot, and does not, consider Rule 403 in making its determination of the instant motion to suppress.

## III. CONCLUSION

For the reasons stated above,

IT IS HEREBY THE RECOMMENDATION of the undersigned United States Magistrate Judge that Defendants' Motion to Suppress Telephonic Communications (Docket No. 47) be DENIED.

DATED: October 17, 2014

_____
NANCY J. KOPPE
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).