UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Case No. 2:14-cr-00194-APG-NJK |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT & RECOMMENDATION |
| | ) | |
| GLEN COBB, et al., | ) | |
| | ) | (Docket No. 132) |
| Defendants. | ) | |

This matter was referred to the undersigned Magistrate Judge on Defendants' Motion to Dismiss Indictment. Docket No. 132. The Court has considered Defendants' Motion, the United States' Response, and Defendants' Reply. Docket Nos. 132, 138, 140.

**I.      BACKGROUND**

On June 3, 2014, a federal grand jury sitting in Las Vegas, Nevada issued an indictment against Defendants Glen Cobb, Charles Cobb, Anna Cobb and Monica Namnard. Docket No. 1. The two-count indictment charges Glen Cobb with one count of conducting an illegal gambling business, in violation of Title 18, United States Code, Section 1955, and charges all four defendants with conspiracy to structure transactions to evade reporting requirements, in violation of Title 18, United States Code, Section 371. The United States also seeks criminal forfeiture of certain property in four separate forfeiture allegations. *Id*. Defendants now seek an dismissal of the indictment. Docket No. 132.

In support of their request, Defendants claim the United States engaged in misconduct during the grand jury proceedings that lead to their indictment. *Id*. Defendants point out that they have repeatedly requested grand jury transcripts from the United States, and have filed three separate

motions[1] before the Court requesting grand jury transcripts, but "have not yet obtained a transcript of any Grand Jury proceedings in this case." *Id*., at 2. Nonetheless, Defendants ask the Court to dismiss the indictment against them because the United States "presumably" used intercepted phone call communications from a New York state case "in presenting its allegations before the Grand Jury in this case" without seeking additional authorization to use the communications. *Id*., at 3. Additionally, two of these communications "that presumably were submitted to the Grand Jury" occurred on dates for which Defendants state the United States has been "unable to produce a signed Eavesdropping Warrant" from New York authorizing the interceptions. *Id*., at 4. Defendants further submit that the United States "apparently" presented evidence to the grand jury of 90 cash transactions in which Defendants engaged in support of the conspiracy to structure count, without presenting the exculpatory information regarding 848 transactions in which Defendants engaged that did cause the generation of CTRs. *Id*., at 4-5.

Defendants further claim that the United States "apparently" presented testimony from a confidential witness to the grand jury, and "apparently relied extensively" on this witness. *Id*., at 6. Defendants dispute the credibility of this witness, and further assert that the United States failed to inform the grand jury that the information in her testimony was hearsay. *Id*., at 6-7, 14. Finally, Defendants ask the Court to dismiss the indictment because the instances of misconduct that Defendants "assume" occurred in the grand jury, taken together, "show a systematic and pervasive history of prosecutorial misconduct that clearly affected the fairness and independence of the grand jury proceedings." *Id*., at 2, 14. Defendants include allegations from a related civil case in their argument. *Id*., at 14-16.

In response, the United States submits that Defendants' "version of what occurred before the grand jury is nothing more than speculation," and that the current motion raises "nearly identical issues" as those raised in prior motions that have already been rejected by the Court. Docket No.

---

[1] The Court denied Defendants' original Motion for Transcription of Grand Jury Minutes, Docket No. 46, without prejudice, because Defendants violated the Court's Local Rules by failing to certify that they had conferred with the United States prior to filing the motion. Docket No. 99. The Court denied Defendants' renewed Motion for Transcription of Grand Jury Minutes, Docket No. 101, and Defendants' Motion for Immediate Production of Grand Jury Minutes, Docket No. 123, on their merits. *See* Docket Nos. 116, 131.

1  138, at 2, 3.  Nonetheless, the United States contends that it did not violate 18 U.S.C. § 2517 and
2  thus did not commit misconduct before the grand jury even if it did use the New York interceptions
3  in the grand jury proceedings.  *Id*., at 2-3.  In support of this argument, the United States cites to the
4  Court's Report and Recommendation, Docket No. 128), in which the Court found that the United
5  States was not required to seek additional authorization to use the intercepted communications from
6  the New York case and, therefore, did not violate 18 U.S.C. § 2517.  Docket No. 138, at 2-3.

7  Regarding the monetary transactions, the United States submits that Defendants merely
8  speculate as to what was presented to the grand jury and, even if only the 90 transactions were
9  presented, this Court has already addressed this issue as well.  *Id*., at 4.  The United States asserts
10 that Defendants made the same argument in their omnibus motion, and that the Court denied their
11 motion, stating that, "[t]he fact that, at other times during a 13-year period, Defendants conducted
12 transactions that complied with the law does not negate the probable cause for the transactions that
13 they allegedly structured in a way to avoid CTRs."  *Id*.; *see also* Docket No. 119, at 5.

14 Regarding the confidential witness, the United States submits that Defendants "state as fact
15 to this Court evident that was presented (or not presented) to the grand jury, when in reality they are
16 engaging in pure speculation."  Docket No. 138, at 4.  Further, the United States submits that, by
17 presenting nothing other than speculation, Defendants "have failed to meet the high threshold to
18 justify the dismissal of the Indictment."  *Id*.  The United States contends that, even if Defendants'
19 allegations are taken as true, they do not rise to the level of misconduct necessary to dismiss the
20 indictment.  *Id*., at 5.  Finally, the United States asserts that it has not engaged in prosecutorial
21 misconduct and, therefore, the indictment should not be dismissed on that basis.  *Id*.  The United
22 States points out that Defendants fail to provide any evidence to show that the grand jury
23 proceedings were tainted and, instead, rely on a Report and Recommendation in a civil case related
24 to the forfeiture of their property.  *Id*., at 5-6.[2]

25 . . . .

26

27 [2]The United States notes that this Report and Recommendation was never adopted by the
   District Judge in the civil case, and that the entire civil case has now been dismissed for lack of
28 subject matter jurisdiction.  Docket No. 138, at 6.

1  　　　　In reply, Defendants submit that the United States' response "offers no credible factual or
2  legal opposition" to their motion.  Docket No. 140, at 2.  Defendants note that they have filed
3  objections to this Court's Report and Recommendation, which found that the United States did not
4  need further authorization to use the New York interceptions.  Defendants further state that they do
5  not believe a motion to dismiss is necessary on that issue, and have filed it in an abundance of
6  caution.  *Id*., at 2 n.1.  With regard to their assertion about which CTRs were presented to the grand
7  jury, Defendants state that "[i]t is a reasonable assumption approaching certainty - not speculation -
8  that the Government would take the same position and use the same evidence before the Grand Jury
9  that it used in making sworn representations to the Court to obtain search and seizure warrants in this
10 case."  *Id*., at 2.  Defendants clarify that they seek dismissal not because evidence submitted to the
11 grand jury was incomplete, but "because the evidence presented and omitted by the Government
12 deliberately deceived the Grand Jury."  *Id*., at 3.  Defendants state, without citation, that the United
13 States "cited the 90 hand-picked transactions as representative of a larger 'pattern' - examples of the
14 'extraordinary lengths' that Defendants would go to avoid CTRs.  That is the misrepresentation."
15 *Id*.  Defendants' contend that the fact that they have conducted "thousands of transactions that did
16 not avoid CTRs (that instead directly generated 848 CTRs) disproves the Government's 'pattern' and
17 'extraordinary lengths' theories."  *Id*.

18 　　　　Regarding the confidential witness, Defendants contend that the United States' response
19 misrepresents their position.  *Id*.  They state that, rather than presenting their position as fact, their
20 argument is that it "is reasonable to **assume** that ...[t]he Government represented a confidential
21 informant had extensive information about Defendant Glen Cobb's 'illegal bookmaking operation'
22 ...[a]gain **assuming** the Government's presentation of evidence to the Grand Jury was consistent
23 with its search and seizure warrant applications, the Government **apparently** presented to the Grand
24 Jury testimony from a confidential witness..."  *Id*., at 4 (emphasis in original).  Defendants further
25 allege, without support, that the United States knew of issues with the credibility of the confidential
26 witness.  *Id*.  In spite of this alleged knowledge, Defendants claim that the United States failed to
27 warn the grand jury of these credibility issues.  *Id*.
28 . . . .

1        Finally, Defendants assert that the indictment should be dismissed because of the United States' "systematic and pervasive history of prosecutorial misconduct that clearly affected the fairness and independence of the grand jury proceedings." *Id.*, at 5. Defendants emphasize that the misconduct does not need to occur simply before the grand jury, but instead must either affect the fundamental fairness of the proceeding or substantially infringe the independence of the grand jury. *Id*. Defendants contend that they have "highlighted over ten months of systematic and pervasive prosecutorial misconduct." *Id.*, at 6. They therefore ask the Court to dismiss the indictment.

## II. ANALYSIS

In determining a motion to dismiss an indictment, "a court is limited to the face of the indictment and must accept the facts alleged in that indictment as true." *United States v. Ruiz-Castro*, 125 F. Supp. 2d 411, 413 (D. Haw. 2000) (*citing Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1954), *cert. denied*, 349 U.S. 922 (1955)). The indictment itself should be "(1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (*citing United States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982), *cert. denied*, 460 U.S. 1086 (1983)).

A grand jury has the task of determining whether probable cause exists to believe that a crime has been committed and to believe that the person named in the indictment charged committed that crime. The Fifth Amendment gives this institution independent stature. *See United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977). Courts therefore are reluctant to intrude in its proceedings.

The grand jury was intended to shield individuals against unfounded accusations. *See Wood v. Georgia*, 370 U.S. 375, 390 (1962). The Supreme Court has repeatedly emphasized that the grand jury protects the individual by requiring probable cause to indict. *See United States v. Williams*, 504 U.S. 36, 51 (1992) ("[T]he whole theory of [the grand jury's] function is that it . . . serve[s] as a kind of buffer or referee between the government and the people . . . to assess whether there is adequate basis for bringing a criminal charge."); *United States v. Dionisio*, 410 U.S. 1, 16-17 (1973) (the grand jury's "mission is to clear the innocent, no less than to bring to trial those who may be guilty").

. . . .

Judicial oversight of the grand jury necessarily implicates the balance of powers between the judicial and executive branches. The prosecutor properly has wide discretion in grand jury proceedings. *United States v. Kaplan*, 554 F.2d 958, 970 (9th Cir. 1977). This discretion, however, is not boundless. The Framers considered the grand jury an institution central to the protection of our basic liberties and interposed it in the law enforcement process to safeguard citizens against governmental oppression. *United States v. Calandra*, 414 U.S. 338, 343 (1974). The prosecutor may not circumvent this safeguard by overreaching conduct that deprives the grand jury of autonomous and unbiased judgment. If the grand jury is to accomplish either of its functions - independent determination of probable cause that a crime has been committed and protection of citizens against unfounded prosecutions - limits must be set on the manipulation of grand juries by overzealous prosecutors. *United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979).

The district court's power to dismiss an indictment on the ground of prosecutorial misconduct is frequently discussed but rarely invoked. *Samango*, 607 F.2d at 881. Courts are rightly reluctant to encroach on the constitutionally-based independence of the prosecutor and grand jury. The court "will not interfere with the Attorney General's prosecutorial discretion unless it is abused to such an extent as to be arbitrary and capricious and violative of due process." *United States v. Welch*, 572 F.2d 1359, 1360 (9th Cir. 1978).

In order to warrant dismissal for prosecutorial misconduct, the misconduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. King*, 200 F.3d 1207, 1213 (9th Cir. 1999) (citation and internal quotations omitted); *United States v. Green*, 962 F.3d 938, 941 (9th Cir. 1992) (citation omitted). To warrant dismissal on this ground, a defendant "must prove that the government's conduct was 'so excessive, flagrant, scandalous, intolerable, and offensive as to violate due process.'" *Unites States v. Edmonds*, 103 F.3d 822, 825 (9th Cir. 1996) (*quoting United States v. Garza-Juarez*, 922 F.2d 896, 904 (9th Cir. 1993).

An indictment may be dismissed for prosecutorial misconduct only upon a showing of "flagrant error" that significantly infringes on the ability of the grand jury to exercise independent judgment and actually prejudices the defendant. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255-60 (1988) ("a district court may not dismiss an indictment for errors in grand jury proceedings

1  unless such errors prejudiced the defendants"). *See also  United States v. Larrazolo*, 869 F.2d 1354, 1357 (9th Cir.1988); *United States v.  Thompson*, 576 F.2d 784, 786 (9th Cir. 1978). Federal courts draw their power to dismiss indictments from two sources, namely constitutional error and their inherent supervisory powers. *United States v. Isgro*, 974 F.2d 1091, 1094-99 (9th Cir.1 992); *United States v. De Rosa*, 783 F.2d 1401, 1404 (9th Cir. 1986).  The district court's role as an overseer of the grand jury is limited, and it "may not exercise its 'supervisory power' in a way which encroaches on the prerogatives of the [prosecutor and grand jury] unless there is a clear basis in fact and law for doing so." *Chanen*, 549 F.2d at 1313.  One challenging an indictment carries a difficult burden.  He must demonstrate that the prosecutor engaged in flagrant misconduct that deceived the grand jury or significantly impaired its ability to exercise independent judgment. *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982).  Courts will not invoke this harsh remedy lightly. *United States v. Al Mudarris*, 695 F.2d 1182, 1185 (9th Cir. 1983).

       In *Bank of Novia Scotia*, the Supreme Court found that because the record did not reveal any prosecutorial misconduct with respect to IRS agents giving misleading and inaccurate summaries to the grand jury it was not required.  487 U.S. at 260.  The court found that the defendants' challenge to the summaries offered by IRS agents "boils down to a challenge to the reliability or competence of the evidence presented to the grand jury." *Id*. at 261.  In *United States v. Calandra*, 414 U.S. 338, 344-45 (1974), the Supreme Court held that an indictment valid on its face is not subject to such a challenge.  414 U.S. at 344-45.  Additionally, the Supreme Court has held that the mere fact that evidence presented to a grand jury itself is unreliable is not sufficient to require a dismissal of the indictment. *Costello v. United States*, 350 U.S. 359, 363 (1956) (a court may not look behind the indictment to determine if the evidence upon which it was based is sufficient).  The Court further held:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed.  The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury.  This is not required by the Fifth Amendment.  An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge

1         on the merits. The Fifth Amendment requires nothing more.

2 *Id.*, at 363. Permitting defendants to challenge indictments on the ground that they are not supported

3 by adequate or competent evidence "would run counter to the whole history of the grand jury

4 institution, in which laymen conduct their inquiries unfettered by technical rules." *Id.*, at 364.

5         It is well settled that an indictment may be based solely on hearsay. *Costello*, 350 U.S. at

6 363-64. An indictment based solely on hearsay evidence does not violate the Fifth Amendment;

7 nothing more is constitutionally required of an indictment than that it be "returned by a legally

8 constituted and unbiased grand jury." *Id.* at 363. In this circuit, that rule applies even if the

9 government could have produced percipient witnesses. *United States v. Seifert*, 648 F.2d 557, 564

10 (9th Cir. 1980).

11         Additionally, prosecutors have no duty to present exculpatory evidence to grand juries,

12 including evidence regarding credibility of witnesses. *See Isgro*, 974 F.2d at 1096; *United States v.*

13 *Al Mudarris*, 695 F.2d 1182, 1186 (9th Cir. 1983) ("The prosecutor has no duty to present to the

14 grand jury all matters bearing on the credibility of witnesses or any exculpatory evidence.") (*citing*

15 *United States v. Tham*, 665 F.2d 855, 862 (9th Cir.1981). "The grand jury need not be advised of

16 all matters bearing on the credibility of potential witnesses. Dismissal of an indictment is required

17 only in flagrant cases in which the grand jury has been overreached or deceived in some significant

18 way, as where perjured testimony has knowingly been presented . . . ." *United States v. Thompson*,

19 576 F.2d 784, 786 (9th Cir. 1978). *See also Jack v. United States*, 409 F.2d 522 (9th Cir. 1969);

20 *Loraine v. United States*, 396 F.2d 335 (9th Cir. 1968).

21         Finally, "the mere fact that evidence itself is unreliable is not sufficient to require a dismissal

22 of the indictment," and that "a challenge to the reliability or competence of the evidence presented

23 to the grand jury" will not be heard. *Bank of Nova Scotia*, 487 U.S. at 261. "It would make little

24 sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment

25 while scrutinizing the sufficiency of the prosecutor's presentation. A complaint about the quality or

26 adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was

27 'incomplete' or 'misleading.'" *United States v. Williams*, 504 U.S. 36, 54 (1992). "Review of

28 facially valid indictments on such grounds 'would run counter to the whole history of the grand jury

1  institution[,] [and] [n]either justice nor the concept of a fair trial requires [it].' " *Id.,* 504 U.S. at 54,
2  *quoting Costello,* 350 U.S. at 364.

3  Defendants' motion to dismiss the indictment relies upon speculation. *See*, *e.g.*, Docket No.
4  132, at 3 (United States "presumably" used New York interceptions); *id.*, at 4-5 (United States
5  "apparently" presented evidence to the grand jury of 90 cash transactions without presenting
6  exculpatory information regarding other transactions); *id.*, at 6 (United States "apparently" presented
7  testimony from a confidential witness to the grand jury); *id* ("apparently relied extensively" on
8  witness); *id.*, at 2, 14 (Defendants "assume" instances of misconduct occurred in the grand jury).
9  This speculation does not merit dismissal of the indictment. Defendants' view of the facts is not a
10 basis for dismissal of an otherwise valid indictment. *United States v. Vargas-Rios*, 607 F.2d 831,
11 835 (9th Cir. 1979). *See also Kennedy*, 564 F.2d at 1338. Defendants have not established a flagrant
12 case of government misconduct. Even if certain information presented to the grand jury is ultimately
13 found to be inaccurate or unreliable, the court may not look behind the Indictment to determine if
14 the evidence on which it was based is sufficient. *Costello*, 350 U.S. at 363.

15 Therefore, Defendants' motion should be denied. For the purpose of determining the instant
16 motion on its merits, however, the Court will assume that the presentation to the grand jury occurred
17 as speculated by Defendants.

18 **A.   New York Interceptions**

19 Defendants ask the Court to dismiss their indictment because they assume the United States
20 presented evidence relating to the New York interceptions, including evidence relating to certain
21 interceptions that they believe to be unauthorized in the first place, without obtaining additional
22 authorization. The United States submits that this Court has already determined that it did not need
23 additional authorization. Defendants reply that they have objected to the Court's Report and
24 Recommendation. The Court analyzes this issue in two separate ways: assuming that the District
25 Judge adopts the undersigned's Report and Recommendation, and assuming that the District Judge
26 declines to adopt the undersigned's Report and Recommendation.

27 . . . .

28 . . . .

If the District Judge adopts the undersigned's Report and Recommendation, the United States is correct that the issue has been decided and the United States appropriately used the interceptions.[3] Therefore, as argued by the United States, this issue is a moot point. Even if the District Judge declines to adopt the undersigned's Report and Recommendation, however, the indictment should not be dismissed.

The district court does not have the discretion to dismiss an indictment because some incompetent evidence was admitted in the absence of egregious misconduct. *United States v. Fox*, 425 F.2d 996, 1001 (9th Cir. 1970). An indictment cannot be attacked on the ground that the evidence before the grand jury was incompetent or inadequate. *Costello*, 350 U.S., at 363–364. Further, "[b]ecause the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial." *Calandra*, 414 U.S. at 349. Therefore, the Supreme Court has declined to extend the exclusionary rule to grand jury proceedings. *Id*., at 352-55. As a result, if the District Judge suppresses the evidence of the interceptions, their purported use in grand jury proceedings does not justify dismissal of the indictment.

**B.     Evidence of Structuring**

Defendants next ask the Court to dismiss Count Two of the indictment because they assume the United States presents only evidence of 90 transactions, when other transactions exist that may not show structuring. Docket No. 132, at 11. In response, the United States contends that, even if Defendants are correct regarding the evidence presented, the United States is not required to present exculpatory evidence to the grand jury. Docket No. 138, at 3-4. In reply, Defendants contend that the issue is one of deliberate deception by the United States, and not one of failing to present exculpatory evidence. Docket No. 140, at 2-3.

. . . .

---

[3] The Court notes that the United States has not conceded that it used the interceptions in the grand jury proceedings. As stated above, Defendants' motion is based upon speculation and fails to establish grounds to dismiss their indictment. For the purpose of resolving the issues on Defendants' alleged facts, however, the Court analyzes the issues as if they occurred in the manner speculated by Defendants. Nothing in this Opinion should be read as the Court making any sort of determination as to what actually occurred in the grand jury proceedings.

1    The parties are correct that the United States is not required to present exculpatory evidence
2 to the grand jury. *See Williams*, 504 U.S. at 53. Defendants' assumption that the United States
3 presented evidence of 90 transactions as a pattern of structuring when over 800 CTRs exist is simply
4 not enough to establish dismissal. "[O]nly in a flagrant case, and perhaps only where knowing
5 perjury, relating to a material matter, has been presented to the grand jury should the trial judge
6 dismiss an otherwise valid indictment returned by an apparently unbiased grand jury." *Kennedy*, 564
7 F.2d at 1338. Even if Defendants' assumptions are correct, they have failed to demonstrate that this
8 is a flagrant instance of deceiving the grand jury.

9    **C.    Confidential Witness**

10   Defendants next ask the Court to dismiss the indictment because they assume the United
11 States presented testimony from the confidential witness referred to in the search warrants, did not
12 inform the grand jury that her testimony constituted hearsay, and did not inform the grand jury as to
13 credibility issues regarding the witness. Docket No. 132, at 13-14. The United States responds that
14 hearsay is allowed in grand jury proceedings. Docket No. 138, at 5. Defendants reply that the issue
15 is not one of hearsay, but rather, one of misleading the grand jury. They state that the government
16 knew, but did not inform the grand jury, of the witness' credibility issues. Docket No. 140, at 5.

17   Hearsay is admissible during grand jury proceedings and, in fact, an entire indictment may
18 be based on hearsay evidence. *See Costello*, 350 U.S. at 363-64. Moreover, when a witness testifies,
19 "[t]he grand jury need not be advised of all matters bearing on the credibility of potential witnesses.
20 Dismissal of an indictment is required only in flagrant cases in which the grand jury has been
21 overreached or deceived in some significant way, as where perjured testimony has knowingly been
22 presented . . ." *Thompson*, 576 F.2d at 786.

23   Defendants have failed to show that the grand jury was unaware it was receiving hearsay
24 evidence, or that the United States was aware of credibility issues regarding the witness that it failed
25 to disclose to the grand jury. Defendants have failed to demonstrate "a defect so fundamental that
26 it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment."
27 *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989).
28   . . . .

**D.     Cumulative Effect**

Finally, Defendants claim cumulative effect. They contend that, while any one of these instances of prosecutorial misconduct may not be sufficient to warrant dismissal of the indictment, their cumulative effect is sufficient. *See Samango,* 607 F.2d at 884.

Assuming the facts most favorable to Defendants, they have demonstrated that the United States put certain information in their search warrant affidavits regarding New York interceptions, financial transactions and a confidential witness. They have assumed that the same information was presented to the grand jury. They have also shown that a Report and Recommendation in a related civil matter, that was never adopted by the District Judge[4], included language that the United States overseized money from one of Defendants' accounts (Docket No. 132, at 15; Docket No. 11 in case 13-mj-948). Further, they have shown that the United States did not return the seized computers until ordered to do so in the related civil matter (Docket No. 132, at 15); the United States represented that they have no proof that Defendant Glen Cobb is a professional gambler (*id*.); and that the Report and Recommendation that has not been adopted in the related case uses the term "constitutionally abhorrent" (*id*.). This Court does not find that the cumulative effect of all of these actions, even if they did occur as stated by Defendants, constituted systematic or pervasive misconduct that substantially influenced the grand jury's decision to indict Defendants, imparted to the grand jury proceedings an aura of fundamental unfairness, or substantially infringed the independence of the grand jury. *See Isgro*, 974 F.2d at 1094; *United States v. Spillone,* 879 F.2d 514, 525 (9th Cir. 1989).

**E.     Prejudice**

A prosecutor may not, by conduct during the grand jury proceedings, deny an accused his right to have his indictment tested by its independent judgment. *Al Mudarris*, 695 F.2d at 1186 (*citing* Samango, 607 F.2d at 884). It takes substantial proof of grand jury bias to overturn an indictment. *United States v. Polizzi*, 500 F.2d 856, 888 (9th Cir. 1974). The Supreme Court has

---

[4]The District Judge adopted the portion of the Report and Recommendation that recommended consolidation of cases, but deferred ruling on the rest of it. Docket No. 13 in case 13-mj-948. The consolidated civil case is currently recommended for dismissal for lack of subject matter jurisdiction. Docket No. 45 in case 14-cv-781.

- 12 -

1  articulated the standard of prejudice that courts should apply when asked to dismiss an indictment
2  prior to the conclusion of the trial as follows: "dismissal of the indictment is appropriate only 'if it
3  is established that the violation substantially influenced the grand jury's decision to indict,' or if
4  there is 'grave doubt' that the decision to indict was free from the substantial influence of such
5  violations." *Id*. at 256 (*citing United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J.,
6  concurring)). "In this Circuit, a grand jury indictment will not be dismissed unless the record shows
7  that the conduct of the prosecuting attorney was flagrant to the point that the grand jury was
8  'deceived' in some significant way." *Wright*, 667 F.2d at 796 (*citing United States v. Cederquist*,
9  641 F.2d 1347, 1352-53 (9th Cir. 1981)).  The conduct also must significantly infringe upon the
10 ability of the grand jury to exercise independent judgment. *Id*.
11     Applying these standards, the court finds Defendants have failed to demonstrate the prejudice
12 necessary to justify dismissal of the indictment.  Defendants have not established that the grand jury
13 was "substantially influenced" by the United States' actions - to the extent those actions actually
14 occurred, which has also not been shown - which biased the grand jury's decision to indict, or shown
15 that there is "grave doubt" that the decision to indict was free from the substantial influence of such
16 violations.  Additionally, the Court finds that Defendants have not established that the government's
17 conduct was flagrant to the point that the grand jury was deceived.
18     Accordingly,
19     Based on the foregoing and good cause appearing therefore,
20     IT IS RECOMMENDED that Defendants' Motion to Dismiss Indictment (Docket No. 132)
21 be **DENIED**.
22 . . . .
23 . . . .
24 . . . .
25 . . . .
26 . . . .
27 . . . .
28 . . . .

**NOTICE**

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 19th day of December, 2014.

NANCY J. KOPPE
United States Magistrate Judge