**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GLEN COBB, CHARLES COBB, ANNA COBB, and MONICA NAMNARD,<br><br>Defendants. | Case No. 2:14-CR-00194-APG-NJK<br><br>**ORDER**<br><br>(Dkt. Nos. 47, 123, 128, 131, 135, 137, 141) |

Defendant Glen Cobb is charged in count one of the indictment with conducting an illegal gambling business. (Dkt. #1.) All Defendants are charged in count two with conspiracy to structure transactions to evade reporting requirements. (*Id.*)

Defendants move to suppress recordings of telephone calls intercepted during an investigation in another case into violations of New York gambling statutes. Defendants argue the Government cannot use the recordings in this case because it did not obtain judicial authorization to do so as required by 18 U.S.C. § 2517(5). Section 2517(5) generally provides that if law enforcement intercepts communications relating to offenses other than those specified in the order authorizing the wiretap, the Government must apply for judicial authorization as soon as practicable to use the recordings in judicial proceedings related to the other offenses. Defendants contend that even if the Government satisfied § 2517(5), the recordings still must be suppressed because New York law enforcement used inadequate minimization procedures to ensure the calls fell within the scope of the New York warrant, as the relevant calls did not involve communications related to the violation of New York gambling statutes. Finally, Defendants argue the recordings must be excluded under Federal Rule of Evidence 403 because the recordings involve two people talking about numbers without those two individuals explaining the meaning of their communication.

1    The Government responds that Defendants Charles Cobb, Anna Cobb, and Monica Namnard lack standing to challenge the wiretaps because they were not participants in the intercepted communications and they were not persons against whom the interception was directed. The Government argues Glen Cobb lacks standing because he has not admitted he is the person who is talking in intercepted phone calls with Brandt England, an individual who was a named target in the New York investigation. The Government further contends that even if Defendants have standing, the Government may use the intercepted calls without further judicial authorization because the charges in this case are intertwined with the charges in the New York case. The Government argues the calls fell within the warrant's scope because Brandt was a target of the warrant and the calls involved discussion of settling gambling debts. Finally, the Government asserts that Defendants' argument under Rule 403 is premature but, in any event, the recordings' probative value is not substantially outweighed by any unfair prejudice.

Magistrate Judge Koppe held an evidentiary hearing and subsequently issued a Report & Recommendation recommending that I deny Defendants' motion to suppress. (Dkt. #120, #128.) She found Anna Cobb, Charles Cobb, and Monica Namnard lack standing to challenge the intercepted phone calls and she therefore denied the motion as to these Defendants. (Dkt. #128 at 2 n.1, 4.) However, she concluded Glen Cobb had standing because the United States asserts Glen Cobb is a party to the recorded phone calls. (*Id.* at 4.)

Magistrate Judge Koppe examined whether the United States was required to obtain judicial authorization under § 2517(5) to use the intercepts against Glen Cobb. She found the New York charge of promoting gambling activity is sufficiently similar to the illegal gambling business and structuring charges at issue in this case that the United States was not required to obtain additional authorization. (*Id.* at 6-7.) She rejected Defendants' argument that violations of New York's gambling law are confined to intrastate activity. (*Id.* at 7.) She also found New York law enforcement used reasonable minimization procedures and the evidence did not show a pattern of law enforcement intercepting innocent calls. (*Id.* at 9-10.) Finally, Magistrate Judge

Koppe declined to consider Defendants' Rule 403 argument because Rule 403 is not a basis to suppress under Title III. (*Id.* at 10.)

Defendants object to the Report & Recommendation. Defendants argue § 2517(5) does not allow for an after-the-fact determination of whether the charged offenses are sufficiently similar to the offenses specified in the warrant authorizing the intercepts. Rather, Defendants assert the statute requires the Government to seek pre-approval as soon as is practicable. Defendants contend the Magistrate Judge erroneously evaluated whether the present offenses are sufficiently similar to the New York offenses specified in the warrant because no such test is permitted under § 2517(5). Alternatively, Defendants argue the federal gambling and structuring offenses at issue in this case are not sufficiently similar to the New York state law gambling offenses specified in the warrant. Defendants argue that even if count one is sufficiently similar to the New York gambling charges, the structuring charge in count two is not because the New York gambling law referenced in the warrant has no currency reporting requirements. Defendants request as a remedy either dismissal of the charges or suppression of the recordings at trial.

Defendants also dispute that only Glen Cobb has standing to challenge the intercepts. They argue that because the Government did not comply with § 2517(5), dismissal is warranted for all counts and all Defendants for which the Government used the intercepts to obtain an indictment.

As for whether the intercepted calls are within the scope of the New York warrant, Defendants argue the intercepted calls were between two Nevada residents, and thus were outside the scope of an investigation into violations of New York gambling laws. Defendants also argue other defects exist in the minimization efforts, including that some of the investigators failed to sign an acknowledgement they had reviewed the current minimization instructions, the origination number of some of the intercepted calls was not listed in the authorization orders, and the Government has not produced a signed warrant to cover calls intercepted between February 9,

2012 and March 8, 2012.  Finally, Defendants again argue the evidence should be excluded under Rule 403.

The Government responds that controlling Ninth Circuit authority allows the use of intercepted communications for offenses that arise out of and are closely related to the crimes specified in the warrant without obtaining subsequent authorization under § 2517(5).  The Government also argues suppression and dismissal are not appropriate remedies where the Government did not illegally intercept the communications.

I conduct a de novo review of the record before Magistrate Judge Koppe in accord with 28 U.S.C. § 636(b)(1)(B) and Local Rule of Practice IB 3-2.

**I. Standing**

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 governs wiretapping by law enforcement.  The statute precludes the use of intercepted communications and evidence derived therefrom in any court proceeding if "the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515.  "What disclosures are forbidden, and are subject to motions to suppress, is in turn governed by § 2518(10)(a)." *United States v. Giordano*, 416 U.S. 505, 524-25 (1974); Omnibus Crime Control and Safe Streets Act of 1968, S. Rep. No. 90-1097, 1968 U.S.C.C.A.N. 2112, 2188 (Apr. 29, 1968) ("Section 2517 must, of course, be read in light of section 2518.").  Section 2518(10)(a) provides that any "aggrieved person" has standing to move to suppress evidence on the following grounds:
>  (i) the communication was unlawfully intercepted;
>  (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>  (iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a); *Alderman v. United States*, 394 U.S. 165, 175 n.9 (1969) ("Congress has provided only that an 'aggrieved person' may move to suppress the contents of a wire or oral communication intercepted in violation of the Act."); *United States v. Oliva*, 705 F.3d 390, 395 (9th Cir. 2012); Omnibus Crime Control and Safe Streets Act of 1968, S. Rep. No. 90-1097, 1968 U.S.C.C.A.N. 2112, 2185 (Apr. 29, 1968) (stating § 2515 "must, of course, be read in light of section 2518(10)([a]) discussed below, which defines the class entitled to make a motion to

suppress"). An "aggrieved person" means a person "who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11).

Magistrate Judge Koppe correctly determined that only Glen Cobb has standing to challenge the intercepted communications. The Government contends Glen Cobb was a party to some conversations intercepted on England's phone and he therefore is an aggrieved person with standing. However, none of the other Defendants was a party to any intercepted communications nor were they persons against whom the interceptions were directed. Defendants cite no authority for the proposition that Charles Cobb, Anna Cobb, and Monica Namnard have standing based on the Government's alleged violation of § 2517(5). These Defendants are not aggrieved persons and they therefore lack standing to move to suppress the intercepted communications. Consequently, I overrule Charles Cobb, Anna Cobb, and Monica Namnard's objections to the Report & Recommendation.

**II. Section 2517(5)**

Section 2517 governs when law enforcement may disclose the contents of intercepted communications. Section 2517(1) and (2) permit the disclosure of intercepted communications to other investigative officers and the use of the communications by the recipient officer "to the extent such use is appropriate to the proper performance of his official duties." Section 2517(3) permits disclosure of intercepted communications or evidence derived therefrom while testifying under oath in a judicial proceeding.

Section 2517(5) addresses the situation when law enforcement intercepts communications related to an offense "other than those specified in the order of authorization or approval." In such a circumstance, law enforcement must obtain the subsequent authorization or approval of a court of competent jurisdiction as soon as practicable before the communications may be disclosed in a judicial proceeding in connection with the unspecified offense.[1]

---

[1] Section 2517(5) provides:

When an investigative or law enforcement officer, while engaged in intercepting wire, oral, or electronic communications in the manner authorized herein, intercepts wire, oral, or electronic

Courts are split regarding the proper application of § 2517(5). Some courts have strictly construed § 2517(5)'s subsequent authorization requirement, mandating that judicial authorization be obtained for any offense not specifically set forth in the order authorizing the wiretap. *See United States v. Marion*, 535 F.2d 697, 703-04 (2d Cir. 1976) (holding that communications intercepted under authorization order for state offense of illegal possession of dangerous weapons could not be used in grand jury questioning related to federal charges for transportation of an unregistered firearm through interstate commerce without subsequent authorization because the "federal offense was separate and distinct from the alleged state crime which formed the predicate for the original . . . wiretap authorization"); *United States v. Brodson*, 528 F.2d 214, 216 (7th Cir. 1975) (holding that communications intercepted under authorization order for offenses under 18 U.S.C. § 1955 could not be used in prosecuting offenses under 18 U.S.C. § 1084 without subsequent authorization because "the two offenses are wholly separate and distinct; they involve dissimilar elements and require different evidence, even though some of it might overlap because both concern illegal gambling").

Other courts have not required the Government to obtain subsequent authorization to use intercepts for offenses that have a significant relationship with the specified offenses. *See United States v. Young*, 822 F.2d 1234, 1238 (2d Cir. 1987) (holding "substantially identical offenses . . . described in the same language and containing the same essential elements" do not require subsequent judicial authorization); *United States v. Watchmaker*, 761 F.2d 1459, 1470-71 (11th Cir. 1985) (holding no subsequent authorization needed for federal RICO prosecution where state drug offense specified in original authorization order was a predicate act); *United States v. Smith*, 726 F.2d 852, 865-66 (1st Cir. 1984) (holding no subsequent authorization required where "the state offenses specified in the wiretap authorization contain the same essential elements,

---

communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

described in the same language, as the federal offenses for which the indictments were returned"). These courts evaluate § 2517(5) in light of its purpose of protecting against the Government obtaining "a wiretap authorization order to investigate one offense as a subterfuge to acquire evidence of a different offense for which the prerequisites to an authorization order are lacking." *Watchmaker*, 761 F.2d at 1469-71 (quotation omitted); *see also Young*, 822 F.2d at 1238 (stating its holding "raises no possibility of 'subterfuge searches' and will neither frustrate the purpose nor undermine the effects of the statute"); *Smith*, 726 F.2d at 865-66 (stating there was "no possibility of a subterfuge search here, since the elements of the state offense specified in the authorization are identical to the elements of the federal offense for which the evidence was used").

Defendants' arguments that the Government must obtain subsequent authorization before using the wiretaps in another prosecution and that courts may not conduct after-the-fact analyses is not without force. But the Ninth Circuit has indicated that no subsequent authorization is needed if the unspecified offense "arose out of and was closely related to one of the original crimes specified in the wiretap application." *United States v. Homick*, 964 F.2d 899, 904 (9th Cir. 1992); *see also United States v. Ortega*, 520 F. App'x 626 (9th Cir. 2013) (holding no subsequent authorization needed because the kidnapping charge "arose out of and was closely related to" the specified narcotics and money laundering offenses). Under those circumstances, the unspecified offense is so closely related to the offenses specified in the wiretap authorization so as to not constitute an "other offense" for purposes of § 2517(5). *Homick*, 964 F.2d at 904 ("Because the attempt to obtain the ring arose out of and was closely related to one of the original crimes specified in the wiretap application, we are not convinced that the wire fraud offense falls within the 'other offenses' provision of the statute.").

The rule stated in *Homick* arguably was not necessary to the Ninth Circuit's holding because law enforcement informed the judge of the unspecified offense in an application to extend the wiretap authorization. *Id.* The *Ortega* case is unpublished and therefore not precedential. *See* 9th Cir. R. 36-3(a). Nevertheless, the Ninth Circuit twice engaged in an after-

the-fact analysis and held that the Government need not obtain subsequent authorization for offenses that are so closely related to the specified offenses that they are not "other offenses" for purposes of § 2517(5). I must follow Ninth Circuit law,[2] and I therefore will apply the test set forth in *Homick* and *Ortega*. In applying that test, I am mindful of the underlying purpose behind § 2517(5): to protect against subterfuge.

Here, the offenses specified in the order authorizing the wiretap were Promoting Gambling in the First and Second Degrees and Possession of Gambling Records in the First and Second Degrees, in violation of New York Penal Law, Article 225. New York Penal Law §§ 225.05–.10 make unlawful knowingly advancing or profiting from unlawful gambling activity. A person advances gambling activity "when, acting other than as a player, he engages in conduct which materially aids any form of gambling activity. Such conduct includes but is not limited to conduct directed toward . . . the arrangement of any of [the gambling activity's] financial or recording phases, or toward any other phase of its operation." N.Y. Penal Law § 225.00(4). A person profits from gambling activity "when, other than as a player, he accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or is to participate in the proceeds of gambling activity." N.Y. Penal Law § 225.00(5).

Count one of the indictment charges Glen Cobb with operating an illegal gambling business in violation of 18 U.S.C. § 1955. Section 1955(a) makes unlawful conducting, financing, managing, supervising, directing, or owning all or part of an illegal gambling business. An illegal gambling business means a gambling business conducted in violation of applicable state law involving five or more persons that has been or remains "in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day." 18 U.S.C. § 1955(b)(1).

Magistrate Judge Koppe correctly concluded no subsequent authorization was needed for the charge of operating an illegal gambling business in violation of 18 U.S.C. § 1955 because that

---

[2] *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).

charge arose out of and was closely related to the original crimes specified in the wiretap authorization. The New York wiretap order authorized interception of calls on England's phone and identified the unlawful gambling crimes England was suspected of committing along with his "accomplices, co-conspirators, agents, and others as yet unknown." (*See, e.g.*, Dkt. #48 at 20.) The calls at issue were intercepted on England's phone pursuant to the authorization order. According to the Government, the calls involve England and Glen Cobb settling gambling debts. There is no evidence the Government obtained a wiretap authorization to investigate illegal gambling activity in New York against numerous named targets as a subterfuge to acquire evidence to charge Glen Cobb with the federal offense of operating an illegal gambling business in Nevada. The charge of conducting an illegal gambling business therefore is not an "other offense" for which subsequent authorization was required.

Magistrate Judge Koppe correctly rejected Defendants' argument that New York's law is directed solely at intrastate illegal gambling activity. Defendants have cited no authority for that proposition. To the contrary, the New York statute criminalizes advancing or profiting from "any" illegal gambling activity. N.Y. Penal Law §§ 225.00(4)–(5), 225.05–.10. Additionally, Defendants' reference to the fact that some gambling is legal in Nevada is irrelevant. Both the applicable New York penal law and § 1955 criminalize only unlawful gambling activity.

Although a closer question, Magistrate Judge Koppe also correctly concluded no subsequent authorization was needed for the charge of conspiracy to structure transactions to evade reporting requirements in violation of 31 U.S.C. § 5313(a) because that charge also arose out of and was closely related to the original crimes specified in the wiretap authorization. The Government's theory is that Glen Cobb engaged in a conspiracy to structure transactions to evade detection of his illegal gambling operation. Although New York's gambling statutes do not have reporting requirements, advancing illegal gambling activity can include "conduct directed toward . . . the arrangement of any of [the gambling activity's] financial or recording phases, or toward any other phase of its operation." N.Y. Penal Law § 225.00(4). This is broad enough to include structuring the proceeds of an illegal gambling operation to evade detection from law

enforcement.[3] Additionally, according to the Government, the structuring activity is part and parcel of Glen Cobb's larger illegal gambling operation. Thus the charge does not fall within the definition of "other offenses" for which the procedure outlined by § 2715(5) is required.

The safest route would be for the Government to obtain subsequent authorization for any unspecified offense, even those that are closely related to the offense specified in the authorization order. Nevertheless, because the charges in the indictment at issue in this case arise out of and are closely related to the offenses specified in the authorization order, the Government was not required to obtain subsequent authorization. I overrule Defendant Glen Cobb's objection to the Magistrate Judge's Report & Recommendation on this basis.

### C. Minimization

Title III requires that wiretapping or electronic surveillance "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." 18 U.S.C. § 2518(5). To satisfy the minimization requirement, the Government must "adopt reasonable measures to reduce to a practical minimum the interception of conversations unrelated to the criminal activity under investigation while permitting the government to pursue legitimate investigation." *United States v. McGuire*, 307 F.3d 1192, 1199 (9th Cir. 2002).

Magistrate Judge Koppe correctly concluded the intercepts were adequately minimized. Regardless of whether England was a Nevada resident, he was a named target of the New York

---

[3] Even if the Government violated § 2517(5), the proper remedy is not dismissal of the charges. *United States v. Blue*, 384 U.S. 251, 255 (1966); Omnibus Crime Control and Safe Streets Act of 1968, S. Rep. No. 90-1097, 1968 U.S.C.C.A.N. 2112, 2195 (Apr. 29, 1968) (stating there was "no intent to change [the] general rule" that "there is no limitation on the character of evidence that m[a]y be presented to a grand jury, which is enforcible [sic] by an individual" (citing *Blue*)). Some courts have ruled suppression also is not an appropriate remedy where the alleged violation is an illegal disclosure, as opposed to an illegal intercept, under Title III. *See United States v. Williams*, 124 F.3d 411, 426-27 (3d Cir. 1997); *United States v. Barnes*, 47 F.3d 963, 964-65 (8th Cir. 1995); *Resha v. United States*, 767 F.2d 285, 289 (6th Cir. 1985); *United States v. Horton*, 601 F.2d 319, 324 (7th Cir. 1979); *United States v. Davis*, 780 F.2d 838, 846 (10th Cir. 1985); *United States v. Vento*, 533 F.2d 838, 855 (3d Cir. 1976). I need not reach that issue because I find the Government was not required to obtain subsequent authorization under § 2517(5) to disclose the intercepted communications in this proceeding.

authorization order.  Calls between Nevada residents are not necessarily outside the scope of the New York authorization order, particularly in the context of an investigation involving numerous identified individuals and unknown co-conspirators. *Id.* at 1200-01.  Magistrate Judge Koppe conducted an evidentiary hearing and found there was no clear pattern that the Government intercepted a substantial number of innocent calls. *See United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir. 1990).  Glen Cobb does not identify any evidence to the contrary.[4]  Glen Cobb also does not identify any particular conversation between England and Glen Cobb which should have been minimized.  I therefore overrule Glen Cobb's objections to the Magistrate Judge's Report & Recommendation on this basis.

### D. Rule 403

Pursuant to Federal Rule of Evidence 403, I may exclude from trial relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, 1972 advisory committee notes; *see also Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.").

Defendant Glen Cobb has not identified any unfair prejudice arising from the intercepted calls.  Moreover, his argument that the recordings are minimally probative and are confusing or misleading (because they involve two people talking about numbers without explaining what they are discussing) cannot be evaluated outside the context of the evidence presented at trial.  I

---

[4] As to Defendants' argument that the Government has not produced a signed warrant from New York to cover calls intercepted between February 9, 2012 and March 8, 2012, Detective McNally testified under oath that the wiretapping was done pursuant to a signed order throughout the relevant period. (Dkt. #134 at 27.)  I will not suppress these phone calls at this stage of the proceedings.

therefore overrule Glen Cobb's objection to the Report & Recommendation on this basis, without prejudice to renew the objection at trial.

### E. Motion for Immediate Production of Grand Jury Minutes

Defendants moved for immediate production of the grand jury minutes to determine whether the Government used the intercepted communications to secure the indictment. (Dkt. #123.) Magistrate Judge Koppe denied the motion because she ruled the Government properly could use the intercepted communications without subsequent authorization. (Dkt. #131.) Defendants object based on their argument that the Government cannot use the intercepted communications. (Dkt. #137.)

I have ruled the Government may use the intercepts in this proceeding without obtaining subsequent authorization. Additionally, even if the Government was required to obtain subsequent authorization before using the intercepts before the grand jury, dismissal is not the appropriate remedy. *See United States v. Blue*, 384 U.S. 251, 255 (1966); Omnibus Crime Control and Safe Streets Act of 1968, S. Rep. No. 90-1097, 1968 U.S.C.C.A.N. 2112, 2195 (Apr. 29, 1968). Disclosure of the grand jury minutes under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) therefore is not warranted. Accordingly, I overrule Defendants' objection and accept the Report & Recommendation relating to the grand jury minutes.

### F. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion to Suppress Telephonic Communications (Dkt. #47) is DENIED.

IT IS FURTHER ORDERED that Defendants' Objections (Dkt. #135) are OVERRRULED and the Magistrate Judge's Report & Recommendation (Dkt. #128) is ACCEPTED.

IT IS FURTHER ORDERED that Defendants' Motion for Leave to File Reply (Dkt. #141) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Immediate Production of Grand Jury Minutes to Determine Use of Intercepted Communications in Grand Jury (Dkt. #123) is DENIED.

IT IS FURTHER ORDERED that Defendants' Objection (Dkt. #137) is OVERRULED and the Magistrate Judge's Report & Recommendation (Dkt. #131) is ACCEPTED.

DATED this 9th day of February, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE