**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:14-CR-00194-APG-NJK |
| Plaintiff, | |
| v. | **ORDER** |
| GLEN COBB, CHARLES COBB, ANNA COBB, and MONICA NAMNARD, | (Dkt. ##49, 119, 125) |
| Defendants. | |

Defendants Glen Cobb, Charles Cobb, Anna Cobb, and Monica Namnard were indicted for transaction structuring. Glen Cobb was also indicted for illegal gambling.[1]

Prior to defendants' indictment, Brett Kressin, a Special Agent with the Internal Revenue Service Criminal Division, applied for warrants to search defendants' residences and safe deposit boxes and to seize property at these locations.[2] Kressin's affidavits provided substantial details showing defendants were involved in illegal activity and that evidence was likely to be found at the locations searched.[3] Magistrate Judge Cam Ferenbach issued the warrants.[4]

Defendants moved for suppression and return of the property seized during the execution of the warrants because the Government's affidavits were insufficient to establish probable cause.[5] (Dkt. #49.) In the alternative, defendants argued they should be given a portion of the seized funds to pay their attorneys' fees.

---

[1] (Dkt. #1.)

[2] (Dkt. ##76-1 at 3-43; 50 at 46-71.)

[3] (*Id.*)

[4] (Dkt. ##50; 49.)

[5] Defendants argued, as a preliminary matter, that they were entitled to an evidentiary hearing to determine whether the affidavits supporting the warrants were sufficient (also known as a *Franks* hearing).

1    Magistrate Judge Koppe issued a Report & Recommendation (Dkt. #119) recommending

2    that I deny all of defendants' motions.  Magistrate Judge Koppe first concluded that defendants

3    were not entitled to a *Franks* hearing because they had failed to show either that the government

4    acted intentionally or recklessly, or that any omissions in the warrant affidavits were material.

5    She then determined the Government's supporting affidavits created probable cause so that there

6    were no grounds to suppress or return defendants' property.  Finally, Magistrate Judge Koppe

7    held that defendants were not entitled to funds to pay for counsel because there is probable cause

8    to believe the assets will be forfeited.

9    Defendants objected to Magistrate Judge Koppe's Report & Recommendation.  I conduct

10    a *de novo* review of the record before her.[6]

11    **I.       DISCUSSION**

12       **A.  *Franks* Hearing**

13    Defendants argue they are entitled to a *Franks* hearing to determine whether the affidavits

14    in support of the warrants established probable cause.[7]  Defendants are entitled to a *Franks*

15    hearing only if they establish both that (1) a warrant's supporting affidavit contains a "deliberate

16    falsehood or reckless disregard for the truth" and (2) the falsehood was material to a finding of

17    probable cause.[8]  Intentional or reckless omissions may establish the first element,[9] but

18    defendants must still show that the "affidavit, once corrected and supplemented," would not

19    provide probable cause.[10]  Defendants have the burden of making a substantial showing as to both

20    elements.[11]

21

22

23       [6] 28 U.S.C. § 636(b)(1)(B); L.R. IB 3-2.

24       [7] *See Franks v. Delaware*, 438 U.S. 154 (1978); *United States v. Hammett*, 236 F.3d 1054,
1058 (9th Cir. 2001).

25       [8] *United States v. Craighead,* 539 F.3d 1073, 1080 (9th Cir. 2008).

26       [9] *United States v. Jawara*, 474 F.3d 565 (9th Cir. 2007).

27       [10] *United States v. Stanert,* 762 F.2d 775, 781-82 (9th Cir. 1985).

28       [11] *Id.*

1    Magistrate Judge Koppe correctly determined that the defendants failed to establish either

2    element of the *Franks* test.  First, she correctly ruled there is insufficient evidence of an

3    intentional or reckless falsehood.  Defendants' arguments for a *Franks* hearing relate to the

4    structuring allegations in the supporting affidavits.  A defendant illegally structures a transaction

5    when she intentionally breaks up a single transaction into smaller portions so that financial

6    institutions will not report the transaction to the IRS.  Defendants argue Special Agent Kressin

7    intentionally or recklessly misled the magistrate judge by disclosing 90 occasions the defendants

8    allegedly structured transactions, but omitting over 800 of defendant's non-structured

9    transactions.  Defendants argue that the non-structured transactions were exculpatory evidence

10   and that if Magistrate Judge Ferenbach knew of them, he would not have had probable cause to

11   believe defendants were intentionally structuring.

12   Defendants argue Kressin's failure to mention the reported transactions to Magistrate

13   Judge Ferenbach is itself a substantial showing that Kressin acted intentionally or recklessly.  I

14   disagree.  Kressin stated that the transactions disclosed in his affidavit were the ones identified to

15   be part of a structuring scheme.  He never indicated that these were the only transactions

16   defendants carried out.  The mere fact that Kressin did not mention the reported transactions is

17   insufficient evidence of bad intent or recklessness.  This is the same conclusion reached by the

18   Ninth Circuit in *United States v. Garcia-Cruz*, 978 F.2d 537, 540 (9th Cir. 1992).  The court held

19   that "a failure [to include information], even if negligent, does not, *without more*, satisfy the state

20   of mind requirement of *Franks*."[12]

21   Defendants argue *Garcia-Cruz* is inapposite because it was possible in that case to glean

22   the omitted evidence from other portions of the affidavit.[13]  But, if anything, *Garcia-Cruz* cuts

23   against defendants' argument.  Kressin's affidavits state that Glen Cobb transacted millions of

24   dollars in illegal gambling funds but that defendants carried out only "hundreds of thousands of

25

26   [12] *United States v. Garcia-Cruz*, 978 F.2d 537, 540 (9th Cir. 1992) (emphasis added).

27   [13] Also, the *Garcia-Cruz* court mentioned this fact as further support for its holding that

28   evidence of negligent omission, alone, is not enough to warrant a *Franks* hearing. *Id.*

1    dollars" in structured transactions.[14]  At one point the affidavits state that on October 28, 2013

2    one of the defendants "conducted several gambling transactions," but the affidavit goes on to

3    clarify that only one transaction was alleged to be a "structured transaction."[15]  The fact that

4    defendants carried out non-structured transactions can easily be gleaned from the affidavits read

5    in their entirety.

6          Even assuming Kressin's omissions met the intent requirement, defendants fail to show

7    how the omissions are material.  "The pivotal question is whether an affidavit containing the

8    omitted material would have provided a basis for a finding of probable cause."[16]  Probable cause

9    is a fluid standard based on common sense considerations and the totality of the circumstances.[17]

10   The magistrate judge need only conclude there is a reasonable chance of locating evidence when

11   issuing a warrant.[18]  This is a practical test, not a technical one.[19]

12         Even if Magistrate Judge Ferenbach knew of the omitted transactions, the mere fact that

13   defendants complied with the law on some occasions does not negate probable cause to believe

14   defendants were structuring other transactions.   Kressin disclosed a number of suspicious

15   transactions he believed were intentionally structured.[20]  The allegedly structured transactions

16   mentioned in Kressin's affidavits occurred over a few-month period at the end of 2013.  The

17   omitted non-structured transactions covered the past 13 years.  The fact that defendants may not

18   have been structuring in the past does not negate probable cause to believe they were structuring

19   in the end of 2013.

20

21

22   _____

23      [14] (Dkt. #76-1.)

24      [15] (*Id.* at ¶25.)

25      [16] *Id.*

26      [17] *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992).

27      [18] *Id.*

         [19] *Id.*

28      [20] (Dkt. ##50 at 59-62; 76-1 at 16-18.)

1      Moreover, Cobb admitted to agents that he structured his transactions and he had no

2 reasonable explanation for doing so.[21]  There also was substantial evidence defendants were

3 moving funds generated from an illegal gambling ring which supports the conclusion they were

4 illegally structuring.  Considering the totality of the circumstances, probable cause existed

5 regardless of whether Magistrate Judge Ferenbach was informed of the missing transactions.  I

6 therefore find Magistrate Judge Koppe properly denied defendants' request for a *Franks* hearing.

7     **B.  Motion to suppress**

8      Defendants next argue there was no probable cause for the Government's searches and

9 seizures.  Probable cause requires only "a fair probability that contraband or evidence of a crime

10 will be found in a particular place."[22]  The magistrate judge must consider the "totality of the

11 circumstances" in a "practical, non-technical" manner.[23]  A magistrate judge's finding of

12 probable cause is given great deference.[24]  I need determine only whether the magistrate judge

13 had a substantial basis for finding probable cause.[25]

14      Kressin's affidavits provided numerous facts in support of probable cause to believe

15 defendants were carrying out illegal gambling and transaction structuring.[26]  Kressin stated that,

16 based on his extensive experience and knowledge, Glen Cobb's activities were typical of illegal

17 gambling and that relevant evidence was likely to be recovered in the locations searched.  For

18 example, Kressin pointed out defendants' proclivity for carrying out transactions using casino

19 chips, the instances of alleged structuring, and an instance where Anna Cobb placed a large sum

20 of money in a trash can in front of an H&R Block after redeeming a wagering ticket at a casino. [27]

21

---

22     [21] (Dkt. #76-1 at ¶16.)

23     [22] *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

24     [23] *Brinegar v. United States,* 338 U.S. 160, 175 (1949).

    [24] *Gates*, 462 U.S. at 238.

25     [25] *Id.*

26

27     [26] I find it unnecessary to recite every fact relevant to a finding of probable cause.  There are a number of additional supporting facts not mentioned below. *See, e.g.,* (Dkt. #76-1, at 24-28.)

28     [27] (Dkt. ##76-1 at 15; 50 at 59.)

The affidavits list transactions of each defendant that agents believed were part of the structuring scheme.[28]  Kressin's affidavit describes, in detail, agents' surveillance of defendants.  Among other things, this surveillance revealed that Glen Cobb interacted with a known illegal gambler.[29]  It showed a connection between Glen Cobb and Pinnacle, an offshore sports wagering website.  It showed Anna Cobb leaving from one of the premises to be searched and dropping a bag full of money—that she had recently collected from a casino—into a trash can.  It showed defendants arriving at casinos and redeeming chips without ever gambling.  Magistrate Judge Ferenbach was entitled to rely on law enforcement's knowledge and experience of illegal gambling and structuring crimes as well as their knowledge and experience "regarding where evidence of a crime is likely to be found."[30]

The affidavits also include information given to agents by a cooperating witness, referred to as "CW-1."  CW-1 told agents that Glen Cobb receives the money he bets at casinos from outside the United States.  CW-1 said that Glen Cobb operated his illegal gambling operation out of defendants Anna and Charles Cobb's residence.  CW-1 also stated that Glen Cobb uses different mobile telephones for bookmaking; that he uses mobile betting devices and his computer if he cannot get to a casino; that he frequently changes his mobile telephone numbers because he is nervous about being monitored by law enforcement; and that he stores large amounts of cash at home and has multiple concealed safes at both his and his parents' residences.[31]

Defendants argue CW-1 was not a credible witness because: (1) she is not familiar with gaming practices; (2) she was a friend of Glen Cobb's wife, and Glen Cobb's wife was feuding with him; and (3) her knowledge of Glen Cobb is hearsay because it comes from Cobb's wife.  These facts might undermine CW-1's credibility somewhat, but they do not vitiate the entire probative value of her statements to law enforcement.  CW-1 provided details corroborating

---

[28] (Dkt. ##76-1 at 15-18; 50 at 59-62.)

[29] (Dkt. #76-1.)

[30] *United States v. Fannin*, 817 F.2d 1379, 1381 (9th Cir. 1987); *United States v. Butler*, 74 F.3d 916 (9th Cir. 1996).

[31] (Dkt. ##76-1 at 13-15; 50 at 57-59.)

1  Kressin's determination that defendants were involved in an illegal gambling and structuring

2  enterprise.[32]

3      As explained above, there was probable cause to believe Glen Cobb was involved in an

4  illegal gambling scheme and that all defendants were involved in a transaction-structuring

5  scheme.  Defendants indicated to law enforcement that all of their deposits into the accounts came

6  from Glen Cobb's gambling operation.[33]  Thus, there was probable cause to search and seize

7  defendants' accounts.  But the affidavits provide further evidence that the locations searched were

8  connected to these illegal activities.  The affidavits portrayed defendants gambling at different

9  casinos and arriving and departing the premises searched.[34]  The affidavit stated that Namnard

10  accessed the safe deposit box searched on at least two dates in which she was allegedly involved

11  in structuring activities.[35]  The affidavit discusses the other safe deposit box searched, registered

12  to Anna and Charles Cobb, which they accessed "several times during the period in which they

13  were structuring chip redemptions."[36]  The affidavits list several deposits from local casinos and

14  sports betting companies into Glen Cobb's USAA bank accounts.[37]  The affidavits list transfers

15  from Glen Cobb's USAA account to TD Ameritrade Accounts controlled by defendants.[38]

16      Reviewing the affidavits in their entireties, applying the totality of the circumstances test,

17  and showing Magistrate Judge Ferenbach appropriate deference, I find Magistrate Judge Koppe

18  properly determined that probable cause existed to issue the warrants.[39]  Kressin provided

19

20  [32] It is also unclear whether Kressin was aware of these alleged facts.  These facts were
    also not in the affidavit and thus not necessarily proper to consider when challenging the
21  affidavit's sufficiency.

22  [33] (Dkt. #76-1 at ¶¶13-4.)

23  [34] (Dkt. ##76-1 at 11-13; 50 at 56-57.)

    [35] (Dkt. #76-1 at 18.)
24
    [36] (*Id.* at 19.)
25
    [37] (Dkt. ##76-1 at 22-23; 50 at 65-66.)
26
    [38] (Dkt. ##76-1 at 23-24; 50 at 66-67.)
27
    [39] Because I have determined that probable cause existed for the issuance of the search
    and seizure warrants, I need not reach the parties' good faith exception arguments. *See United*
28  *States v. Leon*, 468 U.S. 897 (1984).

1   Magistrate Judge Ferenbach with numerous details indicating Glen Cobb was carrying out an

2   illegal gambling operation, that defendants were illegally structuring transactions, and that

3   evidence relevant to these crimes was likely to be found in the locations searched.  The search

4   and seizure warrants were supported by probable cause.

5             **C.  Motion to suppress and return funds seized from the Cobb Irrevocable Trust**

6        Even if I find probable cause for the warrants generally, defendants argue that some of the

7   seized funds from the Cobb Irrevocable Trust should be suppressed and returned because they

8   cannot be directly traced to illegal activity.  Defendants point out that almost $2 million dollars

9   was deposited into the trust "well before the purported structuring activities" and that nothing in

10   the supporting affidavits "even hints" that this sum was related to illegal activities.[40]  Defendants

11   cite to cases holding that depositing illicit funds into an account does not automatically make all

12   funds in the account subject to seizure.

13        Probable cause to believe the trust funds are traceable to illegal activity does not require

14   itemized proof; the Government need show only a fair probability the funds are traceable to

15   illegal activity.[41]  And considering the totality of the circumstances, I find the Government has

16   done so.[42]

17        Any property, including money, traceable to the gambling and structuring crimes, "may be

18   seized and forfeited to the United States."[43]  The affidavits provided a number of facts indicating

19   all funds in the account came from Glen Cobb's allegedly illegal gambling activities: (1)

20   numerous facts, detailed above, indicate the named account holders were involved in transporting

21   proceeds from the alleged illegal gambling and structuring enterprises; (2) the affidavits showed

22   that the majority of funds in the trust were directly traceable to illegal activities; and, (3) the

23   named account holders of the trust admitted that their deposits came from Glen Cobb's gambling

_____

[40] Defendants point out that the supporting affidavits specifically account for only $4,000,000 of transfers into the trust. (Dkt. #125 at 3.)

[41] *Gates*, 462 U.S. at 238.

[42] (*See* Dkt #76-2.)

[43] 18 U.S.C. § 1955(d).

business which is the subject of the government's illegal gambling allegations.[44]  The evidence in the affidavits may not be overwhelming, but they provided at least a fair probability to believe the funds are traceable to illegal activity.  Therefore, Magistrate Judge Koppe was correct in determining the funds were properly seized.

### D.  Motion to return seized property

Defendants argue their property should be returned because there was no probable cause for the search and seizure warrants.  As explained above, I find the warrants were supported by probable cause and that defendants are not entitled to their property under this theory.

Under Federal Rule of Criminal Procedure 41(g), a defendant may request that property be returned if it is no longer needed as evidence.  But here the indictment seeks forfeiture, and the Government may defeat a Rule 41(g) motion by demonstrating property is subject to forfeiture.[45]

### E.  Motion for return of seized funds to pay legal fees

Finally, defendants request the return of a reasonable portion of the seized funds so they can pay for their counsel.  Defendants argue that if I refuse to release funds for their legal fees I will be impinging on their Sixth Amendment right to choose counsel.

But "[a] defendant has no Sixth Amendment right to spend another person's money for legal fees - even if that is the only way to hire a preferred lawyer."[46]  If there is probable cause to believe a defendant's assets will be forfeited, the assets may be seized regardless of whether the defendant will be unable to afford her counsel of choice.[47]  This is because there is "a strong governmental interest in obtaining full recovery of all forfeitable assets" that "overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their

---

[44] (Dkt. #76-1 at ¶13.)

[45] *United States v. Fitzen*, 80 F.3d 387, 389 (9th Cir. 1996).

[46] *Kaley v. United States*, 134 S. Ct. 1090, 1096 (2014).

[47] *United States v. Monsanto*, 491 U.S. 600, 615 (1989).

1    defense."[48]  And as Magistrate Judge Koppe noted, the grand jury's indictment for forfeiture

2    conclusively determines probable cause to believe defendants' seized property will be forfeited.[49]

3          Even if defendants were entitled to some funds for their legal fees, they failed to make the

4    required threshold showing of what specific, definite funds are needed to pay for their counsel.[50]

5    Save bare statements in their papers, defendants have also failed to provide any evidence showing

6    they do not have access to unrestrained funds.  Magistrate Judge Koppe properly rejected

7    defendants' request for funds to pay legal fees.

8    **II.    <u>CONCLUSION</u>**

9          IT IS THEREFORE ORDERED that Defendants' Omnibus Motions to Suppress

10   Evidence from Searches and Seizures, Motions for Return of Seized Property, and Motions for

11   Return of Seized Property to Pay Attorney's Fees (Dkt. #49) are DENIED.

12         IT IS FURTHER ORDERED that Defendants' Objections (Dkt. #125) are

13   OVERRRULED and Magistrate Judge Koppe's Report & Recommendation (Dkt. #119) is

14   ACCEPTED.

15

16         DATED this 9th day of February, 2015.

17

18                                        _____
                                          ANDREW P. GORDON
19                                        UNITED STATES DISTRICT JUDGE

20

21

22

23

24   _____
          [48] *Caplin & Drysdale v. United States*, 491 U.S. 617, 631 (1989).
25
          [49] (Dkt. #1); *Kaley*, 134 S. Ct. at 1096-1097 (citing *Monsanto*, 491 U.S. at 615).
26
          [50] *Monsanto*, 491 U.S. 600; *United States v. Unimex, Inc.*, 991 F.2d 546 (9th Cir. 1993)
27   (in deciding whether to grant a hearing, the court must decide whether the moving papers filed, including affidavits, are sufficiently definite, specific, detailed and nonconjectural to enable the court to conclude that a substantial claim is presented).
28